# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| ANDREW C. DURHAM, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | C.A. No. 2020-0175-SG |
| | ) | |
| GRAPETREE, LLC, | ) | |
| | ) | |
| *Defendant*. | ) | |

## MEMORANDUM OPINION

Date Submitted:  October 15, 2020
Date Decided:  January 11, 2021

Andrew C. Durham, *Pro Se*.

John G. Harris, of BERGER HARRIS LLP, Wilmington, Delaware, *Attorney for Defendant*.

GLASSCOCK, Vice Chancellor

"Chaudieres" is a French word for cauldrons or boilers; Les Chaudieres is a resort property in the island nation of St. Lucia, in the Windward Islands. The property's web site promises that "paradise awaits" at Les Chaudieres, and truly, the pictures that accompany that boast make the resort look like a paradise on earth.[1] Ownership of the property has proved less than paradisiacal for the five siblings who inherited the property, however. The property is owned and operated as a business by the Defendant, Grapetree, LLC ("Grapetree" or in context the "Company" or the "LLC"), which is in turn owned in equal shares by the five siblings.[2] Four of those siblings are also managers (the "Managers" or "Managing Members");[3] the odd man out is the Plaintiff, Andrew Durham, who has filed numerous lawsuits involving the LLC and its management. The relations among the family members are poor. The parties agree that the LLC, as a business, is near failure, and Les Chaudieres has been for sale for several years.[4] A flavor of the relationship among the members is unfortunately conveyed by a paragraph on page 38 of the Amended Complaint in the instant action, which I quote in full: "The LLC has filthy, dirty unclean hands."[5]

---

[1] *See, e.g.*, *Les Chaudieres*, https://www.leschaudieres.com (last visited Jan. 4, 2021).
[2] *See* Verified Direct First Am. Compl. ¶¶ 1, 83, Dkt. No. 20 [hereinafter the Amended Complaint or Am. Compl.].
[3] *Id.* 4. Andrew has appeared *pro se.* Some of the Amended Complaint's paragraphs are numbered, others are not. I use the page numbers for reference where paragraph numbers are not available or are not clear.
[4] *E.g., id.* ¶ 68.
[5] *Id.* 38.

The action involves a claim for damages by Andrew[6] against the LLC. Grapetree has moved to dismiss. For the reasons that follow, that motion is granted.[7]

This matter is a direct action against the LLC.[8] Andrew seeks recovery for two actions by Grapetree. First, he alleges that the LLC had a policy to permit members to reserve two weeks at Les Chaudieres, without payment to the LLC, as a membership perquisite.[9] The right was conditioned on the property being vacant when the request was made.[10] Andrew requested the two weeks including Christmas and New Year's Day of 2020-2021.[11] According to the Amended Complaint, the property had not been rented at the time Andrew requested those weeks, but shortly thereafter was.[12] The LLC honored that rental, rejecting Andrew's request[13]—he alleges that this violated his contractual and equitable rights, and he seeks as damages the rental value of the property for those weeks, which happen to be the most desirable and high-priced of the year.[14] He alleges the value of the rental exceeds $13,000.[15] He seeks recovery under theories of breach of fiduciary duty,

---

[6] I refer to the Durham siblings by first names, not out of disrespect but in the interest of clarity.
[7] Grapetree also filed a Motion to Stay Discovery; that motion is moot, and I will not consider it further.
[8] *See generally*, Am. Compl.
[9] *Id.* ¶¶ 4–8.
[10] *See id.*, Ex. E.
[11] *Id.* ¶ 57.
[12] *Id.* ¶¶ 59, 77.
[13] *Id.* ¶¶ 77, 81–82.
[14] *Id.* 37, ¶ 82.
[15] *Id.* 37.

breach of contract, and conversion.[16]  Next, he seeks reimbursement for expenses arising from a trip to St. Lucia in 2017 to sign a lease-purchase agreement on behalf of the LLC, in the amount of $1,341.56.[17]

In particular, the Amended Complaint alleges that two of the Managing Members, Dee and Jeff Durham, are manipulating the company out of antipathy towards Andrew.[18]  None of the Managing Members is a Defendant here, however.

Andrew commenced this action on March 9, 2020.[19]  Grapetree moved to dismiss the Original Complaint pursuant to Court of Chancery Rules 12(b)(6) and 12(b)(1).[20]  The latter motion invoked a mandatory pre-litigation dispute resolution procedure required by Grapetree's operating agreement.  In response, the Plaintiff amended the Complaint on July 15, 2020 to include the allegation that he had satisfied that provision.[21]  At a status conference on August 11, 2020, defense counsel informed the Court that Grapetree would move to dismiss the Amended Complaint and the Court set a briefing schedule for the forthcoming motion.[22]  On October 15, 2020, the Court informed the parties that it had received all briefing on

---

[16] *Id.* 21 (Count I: Theft of Pl.'s Properly Made 2020-2021 Reservation and Sale by Dee and Jeff).
[17] *Id.* 39.
[18] *Id.* 5.
[19] *See* Verified Direct Compl.: Theft and Sale of Pl.'s Properly Reserved Weeks at the LLC's St. Lucia Property and Unpaid Reimbursement, Dkt. No. 1 [hereinafter the Original Complaint].
[20] *See generally* Mot. to Dismiss Pl.'s Verified Compl., Dkt. No. 7.
[21] *See* Am. Compl. 38.
[22] *See* Tr. of Aug. 11, 2020 Status Conference held via Zoom 4:6–8:6, Dkt. No. 27.

the Motion to Dismiss, would not need to hear oral argument, and considered the matter submitted for decision as of that date.[23]

**Analysis**

The very simple facts here are addressed along with my legal analysis, with respect to each of the two counts.[24] Because this matter is before me on a Motion to Dismiss, I accept the well-pled facts in the Amended Complaint, together with the reasonable favorable inferences therefrom, as true for purposes of the Motion only.[25] I may dismiss a complaint only if, from those facts and inferences, it is not reasonably conceivable that the plaintiff can prevail.[26]

*1. Dismissal as to Count I*

According to the Amended Complaint, Grapetree has a policy that members may reserve up to two weeks of time at Les Chaudieres per year, presumably free to the member, at a time of the member's choosing so long as the property has not been rented for that time.[27] That policy does not arise from the operating agreement for the LLC.[28] It was adopted by the Managing Members, and set out in a letter dated

---

[23] Ltr. to Litigants—Matter Submitted for Decision, Dkt. No. 28.

[24] I draw all facts from the Amended Complaint and documents incorporated therein. *See In re Morton's Rest. Grp., Inc. S'holder Litig.*, 74 A.3d 656, 658–59 (Del. Ch. 2013) (permitting consideration of documents incorporated into complaint in motion to dismiss). As discussed further below, all well-pled facts are assumed true for purposes of this motion.

[25] *See, e.g.*, *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896–97 (Del. 2002).

[26] *See, e.g.*, *id.*

[27] *See* Am. Compl., Ex. E.

[28] The Plaintiff concedes that the LLC's operating agreement does not establish the policy on which he relies. *See id.* 35 (Argument), ¶¶ 1, 3–8. The parties dispute, however, which document

4

May 31, 2016[29] informing Andrew as to its terms, which provide that "shareholders cannot displace time taken already reserved by renters" and that "[r]enters cannot displace shareholder[s] from these . . . two weeks."[30] Andrew had reserved two weeks in October, 2020; he then requested two weeks over the following Christmas and New Year's Day.[31] Jeff, on behalf of Grapetree, asked him to release the October dates accordingly, which Andrew did.[32] Grapetree subsequently told Andrew that the requested two weeks around Christmas were reserved by renters, and thus not available to him.[33] According to Andrew, this rental happened shortly *after* his request, which, per the reservation policy, required his reservation to take priority.[34] I must assume for this Motion to Dismiss that such was the case; that is, that at the time Andrew requested use of Les Chaudieres, no rental contract for those two weeks had yet been entered. I assume as well that the policy provides that the

represents the current operating agreement for Grapetree. Andrew has moved for several Court declarations, including for a determination as to what constitutes the current operating agreement of Grapetree. *See* Pl.'s Mot. Requesting Determination whether the LLC's Current Governing Document is the Third Am. and Restated Operating Agreement of Grapetree LLC and Whether It Has Any Other Rules, Whether the LLC Has an Enforcement Operating Agreement, and Was Legal Counsel Properly Hired by a Majority, Dkt. No. 12 [hereinafter Pl.'s Mot. Requesting Determination]. Because such a determination is unnecessary to my decision here, I have declined to resolve that matter. As described later, however, if Grapetree seeks to shift fees under the terms of a Grapetree operating agreement, the issue becomes ripe for decision. When I refer to the "Operating Agreement" in this Memorandum Opinion, I mean the Third Operating Agreement, except where clear from context. *See* Am. Compl., Ex. B, Dkt. No. 20.

[29] Am. Compl. ¶ 4.

[30] *Id.*, Ex. E.

[31] *Id.* ¶ 57.

[32] *Id.* ¶ 61.

[33] *Id.* ¶ 77.

[34] *See id.* ¶¶ 77–79.

member request is effective at the time made (assuming no conflicting rental), which is Andrew's proffered reading.

According to Andrew, the denial of his two-week request is actionable on several grounds. He alleges breach of the fiduciary duty of loyalty by Grapetree, but that allegation is untenable: the LLC owes no common-law fiduciary duties to its members.[35] He alleges that the implied covenant of good faith and fair dealing requires relief, but identifies no "gap" in the writing on which he relies to which the covenant could apply.[36]

Andrew also alleges "theft by conversion."[37] Conversion is a tort, the elements of which are 1) that a plaintiff has a property interest, which includes 2) a present right of possession, that 3) is dispossessed by wrongful action of the defendant.[38] The problem with Andrew's theory is that, even if he could assert a "property interest" in a reservation at Les Chaudieres, he had no present right of

---

[35] *See, e.g.*, *In re Wayport, Inc. Litigation*, 76 A.3d 296, 322–23 (Del. Ch. 2012)(addressing corporate liability).

[36] *See Edinburgh Holdings, Inc. v. Educ. Affiliates, Inc.*, 2018 WL 2727542, at *9 (Del. Ch. June 6, 2018) ("The implied covenant is available only where the terms to be implied are missing from the contract; it 'cannot be invoked to override the express terms of a contract.'") (*Kuroda v. SPJS Hldgs., L.L.C.*, 971 A.2d 872, 888 (Del. Ch. Apr. 15, 2009)).

[37] Am. Compl. 21 (Count I).

[38] *E.g.*, *Gould v. Gould*, 2012 WL 3291850, at *7 (Del. Ch. Aug. 14, 2012).

possession at the time of the alleged wrong—he was instead denied a right to reserve *future* time at the property.

Finally, Andrew alleges that Grapetree has breached a contract with him. He maintains that the policy conveyed to him by the Managing Members in the May 31, 2016 letter formed a contract between himself and the Company.[39] But no contract exists under these facts. "[A] valid contract exists when (1) the parties intended that the contract would bind them, (2) the terms of the contract are sufficiently definite, and (3) the parties exchange legal consideration."[40] What Andrew points to as a "contract" is an express policy announced by the Managers of Grapetree with respect to the distribution of surplus time at Les Chaudieres. The policy announced was undoubtedly a benefit to members, but it was unilaterally announced to Andrew by letter. There was no meeting of minds over the terms, nor was any consideration exchanged. On these facts, the "reservation policy" cannot be a contract.

Andrew spends considerable time in the Amended Complaint and briefing describing the fact that Jeff and Dee dominate the Managing Members, and that Jeff and Dee bear him animus.[41] He contends that they manipulated the member reservation policy so as to deny Andrew the benefit of his time at Les Chaudieres,

---

[39] *See* Pl.'s Answer to Def.'s Combined Mot. to Dismiss Pl.'s Verified Direct Am. Compl. and Mot. to Stay Discovery 2, Dkt. No. 25 [hereinafter Pl.'s Answering Br.]; Am. Compl. ¶¶ 3–8.
[40] *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1158 (Del. 2010).
[41] *See, e.g.*, Am. Compl. ¶¶ 34, 37, 39–41, 54.

to which he was entitled under the policy adopted by the Managers, in vindication of that animus. If true, this may state a breach of fiduciary duty claim against Jeff and Dee. But Andrew has not sued Jeff, Dee, or the other Managing Members here. He has sued Grapetree, but he has no claim in contract or tort against Grapetree under the facts of the complaint. Therefore, Count I is dismissed.

*2. Dismissal as to Count II*

Andrew seeks reimbursement for travel to St. Lucia in 2017, during which he engaged in Company business. According to Andrew, his signature was necessary to a lease agreement between Grapetree and proposed long-term lessees of Les Chaudieres.[42] He further alleges that Grapetree made a contractual promise to him to pay his expenses for that trip, and that he has demanded repayment, which has been denied, wrongfully, by the Managers.[43]

Andrew bases his contract claim on an August 22, 2017 communication from Jeff on behalf of Grapetree to the members, requesting that they use powers of attorney, which Grapetree's St. Lucian attorney would provide, to sign the lease.[44] The letter also stated that a member may instead "fly down there and sign the lease in person."[45] Andrew informed Jeff that he chose to fly to St. Lucia to sign—Jeff

---

[42] *Id.* ¶ 85a.
[43] *Id.* 27 (Count II); ¶¶ 92–93.
[44] *Id.* ¶¶ 84–85a.
[45] *Id.* 30.

responded that Grapetree would not reimburse the Plaintiff for the costs.[46] Admittedly "[f]ed up with Jeff,"[47] Andrew decided to fly to St. Lucia nonetheless. He now seeks reimbursement for the expenses of that trip, in the amount of $1,341.56.[48]

Under the operating agreement at Part 9, the Managers are solely responsible for incurring and paying expenses of Grapetree.[49] The only evidence of a contract between Grapetree and himself that Andrew points to is Jeff's email of August 22, 2017.[50] But that document does not promise reimbursement. It indicates that a power of attorney was being prepared for Andrew and the other members by an attorney for Grapetree in St. Lucia, and that the members were asked to execute those powers of attorney, "or you may fly [to St. Lucia] and sign the lease in person."[51] This is not a promise to pay the expenses of in-person travel to St. Lucia, as Jeff expressed clearly to Andrew in subsequent conversation.[52] Notwithstanding this communication, Andrew, "fed up," decided to fly to the island. There is simply

---

[46] Or, at most, would reimburse him $150. *Id.* ¶ 87.
[47] *Id.* ¶ 88.
[48] *Id.* 39 (Prayer for Relief) ¶ 2.
[49] *See id.*, Ex. B, § 9.
[50] *Id.* 30.
[51] *Id.* 30.
[52] *Id.* ¶¶ 87, 89.

no contractual basis for recovery against Grapetree based on the facts pled.[53] Count II is dismissed.

### 3. Fees and Costs

Both the Third and Fourth Operating Agreements provide that, where a member sues Grapetree "and the Claiming Member does not obtain a judgment on the merits that substantially achieves . . . the full remedy or remedies sought," the Company is entitled to its legal fees.[54] Andrew has lost on both counts of the Amended Complaint. If either of these operating agreements controls, Grapetree is entitled to its reasonable fees in this matter. Andrew, however, contends that the Third and Fourth Operating Agreements were never validly adopted, and has moved for a declaration of such.[55] Grapetree seeks its fees but has not responded to

---

[53] Andrew appears to argue that the cost of his trip is similar to the amount the company would have incurred for his apostille power of attorney—an unsupported and, frankly, fatuous observation.

[54] *See* Am. Compl., Ex. B, § 14; Mem. of Points and Authorities in Support of Def.'s Combined Mot. to Dismiss Pl.'s Verified Direct Am. Compl and Mot. to Stay Discovery [hereinafter Def.'s Opening Br.], Ex. A, § 16 (Fourth Am. and Restated Operating Agreement of Grapetree, LLC), Dkt. No. 24.

[55] *See generally* Pl.'s Mot. Requesting Determination.

Andrew's motion.[56]  If Grapetree intends to vindicate its fee request, it should answer the motion, and I will address the matter.[57]

*4. Default Judgment*

Finally, I note that Andrew moved for a default judgment in this matter, a motion I denied from the bench on August 11, 2020.  Andrew spends a substantial portion of his Answering Brief in noting his disagreement with this bench ruling.[58]  To the extent this is an attempt at re-argument of the Motion for a Default Judgment, it is untimely and misplaced, and denied.

## Conclusion

The sole Defendant in this matter is Grapetree.  Both counts are dismissed with prejudice as to Grapetree.  As described above, the allegations of the Amended Complaint may state a breach of duty cause of action against some or all of the Managers of Grapetree, and nothing in this Memorandum Opinion should be read as prejudicial to such an action.  A prerequisite to such an action, presumably, would be a thirty-day negotiation period, as mandated by Grapetree's Fourth Operating Agreement.[59]  Should Andrew intend further litigation, I strongly urge the members of Grapetree to seize that opportunity to resolve these issues.  This ongoing picayune

---

[56] *See* Def.'s Opening Br., Dkt. No. 23; Reply in Further Support of Def.'s Mot. to Dismiss Pl.'s Verified Direct Am. Compl., Dkt. No. 26.

[57] See note 28, *supra.*

[58] *See* Pl.'s Answering Br. 3–5, 10–12.

[59] Def.'s Opening Br., Ex. A § 15.  As noted above, Andrew contests the validity of this Operating Agreement.

litigation is not a rational use of the time of adult human beings, who should be able to treat one another, if not as loving family, at least with respect, and who should easily be able to accommodate one another regarding these disputes.

An appropriate order is attached.